Number 19-2057, Violox Technologies, LLC against Unified Patents. Mr. Hart. Please the Court, I'm John Harreff representing Violox Technologies. I'll begin by discussing invalidation of Claim 3. If you refer to the appendix at 144, you can see that Claim 3 is directed at formatting data for display. Claim 3 also recites a limitation or a truncation step that begins with the word if, which arguably makes the claim a conditional limitation. And I'm going to address the conditional limitation at this point. If you refer to the appendix 18-22, that's the final written decision, you'll see that the Board invalidated independent Claim 3, in part by applying one of the Board's precedential opinions, ex parte Schulhauser, to eliminate the... Do I understand correctly that that part of the decision is not necessary to the Board's decision because the Board also found both of the if possibilities taught or rendered obvious by the prior art? Well, the Board was addressing both Claim 1 and Claim 3. Claim 1 legitimately has two if statements. Claim 3 only has one. So the application of Schulhauser is a little bit different depending on which claim you're looking at. Right, I may have stated my question not quite right. I took it from the Board decision that we do not have to reach that Schumacher issue because the Board found, even apart from that, that the claims would have been obvious in light of the prior art. That's what the Court's decision said, yes, sir. Going back to the conditional limitation in the application of Schulhauser, as you note, the Board's action of applying Schulhauser to Claim 3 completely wrote out the only data formatting limitation of a claim that's directed to formatting data, which is Claim 3. So leaving Claim 3 with absolutely no limitations that are relevant to data formatting. The Board characterized this decision as consistent with Schulhauser as a matter of law. That is, the Board asserted that, per Schulhauser, any conditional claim limitation may be written out, ignored, expunged when applying prior art references. To quote the final written decision, as discussed above, the broadest reasonable interpretation of a method claim that includes a conditional step encompasses where only the non-conditional steps will perform. And that's exactly what the Board's conclusion was with respect to Claim 3. In other words, according to the Board, per Schulhauser, the conditional limitation need not be found in the prior art. But Schulhauser does not say that. If you read Schulhauser, it applies to mutually exclusive steps, if one step or the other step. And again, in Claim 3, we have one conditional limitation. Furthermore, the Board's decision is based on facts that were not present in Schulhauser. Schulhauser specifically requires mutually exclusive steps. Claim 3 does not have mutually exclusive steps. Furthermore, there's no authority that says any conditional claim may just be written out of an application. The Board's actions with respect to Claim 3 were contrary to the Board's own precedential decision, that's Schulhauser, and also contrary to one of its non-precedential decisions, ex parte doppelung, which I think if applied by the Board would have retained that conditional step in Claim 3. Furthermore, the Board's actions are contrary to this court's decision, notably HITERA Communications versus Motorola Solutions, which is Appeal 19-2124, Federal Circuit 2021, which cites Lincoln Life, a prior decision from this court in 2010. Now, we did not brief HITERA in the papers that we submitted to this court for appeal. I'm talking about it now for the first time. But HITERA was issued after the final written decision in the IPR that we're appealing from. HITERA held that to render obvious a claim at issue, the prior art must teach each step of the claim, including the responses to each condition. This is because a claim at issue in HITERA, at least, required performance of a selecting step in response to either of two conditions. Counselor, a standard review here with respect to many of the arguments that you just made is substantial evidence, whether the Board's decision is supported by substantial evidence. Yet it seems to me that there's a little battle of the experts going on here. And your expert was testimony, and the evidence that you put forward with your expert was discounted significantly. And whereas on the other side, it was credited. Isn't that your problem, the big problem you have to overcome now? Your Honor, it's a problem with respect to talking about what the references teach and what they don't teach. But I'm focusing just on, right now, application of legal precedent to the facts in the claim. I wanted to hear something different, but you can answer my question when you get to it. So with Claim 3, there's but one condition, and Claim 3 cannot be analyzed by analogy to Schulhausen. To summarize, Claim 3 recites one method that requires execution of an iterative truncation step in order to format data for display. And Judge Reyna, I will discuss the iterative truncation step and the issues that were brought up with that. So under HITERA, a reference would have to be capable of iterative truncation in order to anticipate Claim 3. Yet the board wrote that limitation out of the claim. Having shown that the law of this court requires the reference teach the conditional limitation of Claim 3, I'll move on to a review of what Bertram actually teaches. But before I get into what Bertram teaches, just to give the court some understanding or better understanding of the claim that we're talking about here, Claim 3, I'll refer you to the appendix, page 135, which is the 423 patent, column 8, lines 47 to 67. There you will find an example of the type of truncation that's recited in Claim 3. And the example applies to a list of cities, many, perhaps thousands of cities that you want to display on one screen. And it goes through an iterative truncation to get the list of cities down to three entries because the screen can only show three rows of data. So we have to go through this iterative truncation, which goes very quickly to display that. Now turning to Bertram, if you look at appendix 1919, it's figure 7. This illustrates Bertram's process, 162, for reducing width of columns so that all columns in a database can be squeezed onto one page or one display screen. So there's a data formatting operation in Bertram that begins by abbreviating the characters to reduce the width of the column as much as possible. So the abbreviation step might be to change a capital letter to a lowercase letter, for example. Now after all that abbreviation is done, if the column width is still too wide, then Bertram has a one-time truncation, which in figure 7 is steps 194 and 196. So step 194 checks the width of a current column against the set width. And if it's too large, step 196 truncates the entry in that column so that the column is at the set width. What units does Bertram use for measuring width? Bertram does not disclose that. That's one of the issues that's been... It doesn't teach using, perhaps among others, characters as units. Bertram has a display that shows that after truncation there are allegedly five characters in a column. And the example they give is in table 8 of Bertram. Is that the one where perhaps the written description in Bertram suggests that the figure in Bertram is off? No, it's not, Your Honor. Figure 8 shows the first column with the word system with no lowercase letters or letters removed. And it's six characters long. Now, the board argues that it should be S-T-Y-M-E with no M at the end of it. Conceding that, arguably, there's another column that's got six characters in it. And then there's... So not all the columns in table 8 actually display five characters. And I don't know where the disconnect is in that. But the written description, putting aside the figure, still teaches a truncation to five. Is that right? Even if the figure doesn't come within that set of words? Well, I don't agree that it does. But I'm not here to argue that point. If we just accept that for argument's sake, it really has no bearing on Claim 3. Because Claim 3 has... The feature that's in Claim 3 that's not taught by Bertram is iterative truncation. And that iterative truncation is in the example that I mentioned about truncating a list of a thousand cities down to three entries that will cover all of those cities. So in Claim 3, the entry that has to be truncated has one letter or two letters cut off the end of it. And then the width is checked. And if you need to do more, you cut off more. And that loop continues until all the rows of data can be displayed on one screen. And that's the way Claim 3 works. Again, Bertram has a one-time truncation. And once that truncation is done, then the columns are displayed. So there's no iterative step in Bertram. And that's important in our invention because we want to maintain as much information as possible. So we don't want to cut off extra characters just because we can. We want to cut them off in a way that gets to the right number of rows of data without cutting off any more information about the cities. And just to be clear, in Claim 3, we're talking about one column with maybe a thousand rows. And we want to end up with one column with three rows. How do you truncate to do that? That's what Claim 3 does. Bertram starts out with perhaps 100 columns. And they want to make them skinny so they'll fit on one page. So their process is different. But in any event, their truncation, if you look at Figure 7 and read the description, clearly is a one-time truncation. There's no iterative steps in that. I know your time is running low. Can I just ask you one question about the challenge to the denial of discovery on real party and interest? Do you agree that if we were to conclude that the board's invalidation, its unpatentability ruling was to be affirmed, there would no longer be any possibility of estoppel or related doctrines making the real party and interest information immaterial? Yes, Your Honor. Okay. Do you agree with that? I would have thought it would have worked as the appellant in your favor, not having the real party and interest established. Well, we would like to find the real party and interest. And I understood your question to say? Once the patent is canceled, I took your answer to me, it doesn't matter. It might have mattered before the patent is canceled because maybe you actually have an interest in knowing who's on the other side of the case. And as long as the patent is still in dispute, it might have a potential effect on who is going to be bound. So I was just asking the question, and I think you took it right that if the patent is to be canceled because on the assumption for the purposes of this question that we affirm the board's final written decision on unpatentability, then it doesn't matter anymore. Yes. Okay. But just to be clear, the board didn't cancel claim. No, it's ministerial once the ruling is affirmed. All right. See, I'm out of my time. We'll save you a little time. Let's hear from the other side. Okay. Ms. McComas. Good morning. May it please the court. Debbie McComas on behalf of Unified Patents. Judge Rayna, I think your point was well taken. This is really the classic substantial evidence case where the board very clearly weighed the evidence, and they weighed it against bylaws and in favor of Unified Patents. I want to cover just a few things in response to my friend's argument, and specifically with respect to Schulhauser. Judge Toronto, you had it right. The Schulhauser analysis, in each instance where the board applied the obvious analysis, they recognized their Schulhauser approach, but then they said, it doesn't matter because we're going to find that it applies to that we find that Bertram discloses each limitation, even the conditional limitations, so we don't really have to go there. For help on that, there are specific sites if the court needs them. For instance, at Appendix 44, the board says this is a conditional step which does not need to be shown in finding unpatentability, nonetheless. We now address this limitation. Can I ask you about, I think, another point that I think Mr. Harrop featured, at least as I understood it, which is focusing on Claim 3. There's a do it more than once requirement, an iterative requirement. Where did the board address that in its discussion of Claim 3? That's not in Claim 1, right? Right, that's Claim 3. In the Claim 3 discussion. I've been referring to it as the rinse and repeat. The what? I refer to it as the rinse and repeat limitation. At Appendix 45 through 47 is where the board is addressing that. In the board's slides in support of that, Greens Fund's declaration at Appendix 1804 that talks about specific... I'm sorry, first in the board's decision, what page? Yes, sir, Appendix 45 through 47. Right, so where is the specific discussion of iteration? At Appendix 46, and it's citing to Greens Fund's declaration. Okay, and then you were going to, I think, you were starting to take me to that. I was jumping ahead. Appendix 1804 is the portion of Philip Greens Fund's declaration that talks about that. And he explains specifically, talking about limitation 3.5.3. He says, Bertram teaches comparing the reduced number of characters to the specified limit. Specifically, it's noted at 3.5.2, so he's relating back to his prior discussion. Bertram teaches a loop at steps 172 through 192, 174 through 192, and 176 through 192 of Figure 7. To iteratively compare the number of characters to the set width and reduce the number of characters until the width of the column heading is less than or equal to the set width. And if it's helpful, we can go back to Figure 7. It's right on the next page. This is the 186, 188 loop. I'm sorry? You don't need to go there. Okay, okay. Thank you. Unless the court has any other questions, I'll yield my time. I'd like to ask you about the real party in interest. You don't think that it's important in a patent validity dispute, or infringement dispute for that matter, for a party to know who's on the other side? I don't think we get to that question in this case. You may not if we affirm, but right now we still have a live patent, which means that there is a potential for later invocation of that patent, and therefore a potential for challenges to that patent. You don't think that the patent owner, or in an infringement situation, the other side, has an interest in knowing who's on the other side, and therefore bound? The reason why I say it doesn't matter in this case is because VILOX expressly disclaimed any relevance of it to this case, and that was one of the bases for the board to decide we've had enough discovery. It's not that discovery was cut off entirely. They were given discovery, and they didn't raise this issue. This is an abuse of discretion issue on when discovery is enough. That's really what we're talking about here, not can we never have that discovery, can we never find that information. Here it comes up for the first time at the oral hearing, in the last few minutes of the oral hearing. Tell me if I'm wrong. I thought that the board, when denying discovery, though reciting in the background the fact that it was raised late, did not in fact state that as a reason, let alone an independently sufficient reason for denying it. They denied it in large part because they disclaimed it, and that is in the board's decision. They said, look, in part they've told me over and over that this doesn't impact my case here, and that's exactly what they said. We're not challenging. To say it doesn't affect the case here is one thing. To say that it might have an impact if I win my case here on future cases, that's what the whole issue is. So they never said it has no potential for impact on matters going forward, because of course it does. It affects whether there's an estoppel, or issue preclusion, or claim preclusion, or something like that. Well, here there's no time bar, right? So it doesn't apply in this case. There's no harm. A time bar might affect this case. That, again, is not the point. The point is that even in an IPR that can go ahead, regardless of who the real party in interest is, knowing who the real party in interest is can affect future possible litigation. And I'm not suggesting, Judge Toronto, that they couldn't seek that discovery in trial court. Why shouldn't they be able to seek it here? I thought there's, I don't know, discussion in various cases going on in the country about how there's an actual interest in a particular case in finding out who the other side is for various reasons, not least that it might affect future cases. And they could have sought that here. They could have asked for a discovery. I'm sorry, I thought that's what they did ask you. Put aside the timing point, because the board, I don't think, relied on it, and in any event didn't independently rely on it. I'm just trying to understand. You do seem to be saying, for unified patents, that a party in a patent case doesn't actually have an interest in finding out who's on the other side of the case. No, I'm not saying that. I'm saying there are procedures you follow. There's a time to raise these issues and raise these questions, and it's up to the board and its discretion to decide on a given case whether or not adequate discovery has been had. Yes, it's up to the board, but it's very hard to see how the prevailing party here, if you continue to prevail, could raise an estoppel in the district court if similar issues arise. It looks to me as if you've waived that opportunity, and estoppel was critical to the structure of forming the PTAB and having these procedures. I don't think they would be foreclosed from raising estoppel, Judge Newman, or even challenges. Isn't that a very serious risk of being foreclosed? You may not think so, but actually I would think so from the very structure of the statute. I'm not sure I'm quite following you, but I think what I'm saying is that it wouldn't... The fact that they didn't seek the right discovery at the right time in this proceeding for the IPR... This is an administrative proceeding. The rules of issues being raised are not... actually don't apply. What we're looking here for is information, reach the truth, understand the patents and what's involved, and resolve the issues between these parties. That's what the whole American Vince Act is about. And refusing to say who the real party in interest is it seems to me that having prevailed on that in this proceeding through this appeal does not leave the issue open to claim an estoppel in any subsequent proceeding. Doesn't that make sense? I'm not entirely sure I'm following you. I think the estoppel argument would be on Bylock's side unless I'm misunderstanding the question. The purpose of the real party in interest proceeding is for estoppel purposes. Do you agree with that? Yes, I do. So we don't tell the real party in interest so there's no estoppel. Either way, the patent owner isn't estopped and neither can the prevailing party claim an estoppel. I think what I'm saying is the fact that they didn't seek the right discovery here... And to be clear, there was discovery. They're just complaining belatedly that it wasn't good enough and there wasn't enough of it. So there was voluntary discovery provided by unified patents and they had opportunity to come back and push for more and ask for more during the normal discovery process. They didn't do that. I would suggest for your concern with respect to estoppel and whether or not they have the ability to raise estoppel in a subsequent case if this patent weren't now expired and the other issues weren't there, they could still do that. They could still, in discovery in a district court case, seek the same information that they failed to seek here. It's a requirement in the forms to state the real party in interest. Why should they have to take discovery in order to require the party filling out the form to say the real party in interest? We did state our real party in interest. The real party in interest here was unified patents. We haven't changed our position on that. And we provided discovery that we felt like supported that. And you're saying that this then would or would not bar a real party in interest, a shareholder in unified patents or however it works, a partner, from claiming estoppel? I would suggest to you that it's been unified patents' position all along that unified members are not real parties in interest. But I'm also suggesting to you to, I think, to address your concern of whether a patent owner would have the ability to address that or challenge that in the district court. I think that issue still exists. You know that that's coming up in several cases. Yes, ma'am. And it's certainly, the issue has certainly been joined in this case, it seems to me. I would suggest to you that it wasn't properly joined in this case. And that's probably not the right case to adjudicate that or have that issue, simply because the time to raise that was belated. They got discovery. They got the information they needed. If they wanted more, they could have asked for it at the right time and under the right circumstances. So in this proceeding, and in a case where they never challenged real party in interest, they never made these assertions that you feel they should have made, this is not the right instance for that. If there is an instance where they believe factually that should change, they're not foreclosed from raising that in a district court proceeding. We would still submit that there is no, that substantively unified patents is the real party in interest, and that's been adequately disclosed. OK. No questions. If there's no further questions, I'll yield my time. Thank you. Counsel, do you have your rebuttal time? Very briefly, Your Honors. Counsel for unified was referring to figure seven steps 172 to 192 as showing iterative truncation. It shows iterative abbreviation. That's very clear. Truncation is steps 194 and 196. It's a one-time truncation. So whatever the expert, Dr. Greenspan, might have said was directed to the abbreviation being a looping process, which it is. We agree with that. But the truncation is not. Second thing I want to point out is the whole question of application of Schulhauser  I believe the court should be reviewing de novo. The board failed to comply with its own precedents and failed to comply with admittedly later opinions of this court. But using the later opinions of this court, I think you can see that there is an issue for de novo review by this panel. I also want to, since you brought up this issue of discovery, the bylaws never disclaimed discovery. I was asked at the oral hearing if the discovery request that we wanted, the additional discovery request we wanted was granted, would that somehow or another affect the board's ability to come to a decision? And I said, no. You're going to make your decision one way or the other. We just want the discovery because we want to know who the real party of interest is. Now, as to the actual discovery, we asked for it late because applications in internet time issued during the course of our briefings in discovery, other type of discovery. We brought that issue up with counsel for Unified and said we'd like some discovery. Unified said, and this is all in the briefs, Unified said, we'll give you discovery, but we want to make it voluntary. Please hold off. We held off. We gave them specific requests, document production, interrogatories, and everything. What we got was a canned discovery request that Unified provides to anybody who wants discovery. In fact, this was supposed to be under seal. The documents weren't even classified or marked as being subject to an order. And we discovered that, or Unified discovered that to their displeasure during the oral hearing. So the discovery was non-responsive. We tried to get more. We didn't get more. And I think Unified's characterization of that whole issue is not correct. Anything else? Anything else? Our thanks to both counsel. The case is taken on resubmission.